# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CR-11-40-RAW |
| ) | |
| KENNETH CORNELIUS KITCHENS ) | |
| and ABDUL HUNT QUAN BRYANT, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

The Defendants Kenneth Cornelius Kitchens and Abdul Hunt Quan Bryant were charged by complaint and later indicted with conspiring to possess cocaine with the intent to distribute. They urge suppression of the evidence supporting the charges (seized from Bryant's rental car) as the fruits of an illegal detention following a routine traffic stop for speeding. The Court referred the matter for a report and recommendation pursuant to 28 U.S.C. § 636(b)(2)(B), and an evidentiary hearing was conducted on July 28, 2011. For the reasons set forth below, the undersigned Magistrate Judge hereby recommends DENIAL of the Defendant Bryant's Motion to Suppress [Docket No. 39] and the Defendant Kitchens' Motion to Suppress [Docket No. 41].

### A. Factual Summary

A state trooper stopped the Defendants for speeding and making an improper lane change while traveling eastbound on Interstate 40 in Sequoyah County, Oklahoma on May 11, 2011. Bryant was driving and pulled his rented van over when he noticed the trooper's flashing lights. The trooper approached the passenger side of the van, noticed a

7strong scent of air freshener in the car, and asked Bryant for his license. Bryant produced a valid Pennsylvania driver's license, informed the trooper that he rented the van in Las Vegas and produced a valid one-way rental agreement identifying him as the renter. The trooper informed Bryant he had been stopped for speeding and making an improper lane and took him to his patrol car to issue a warning citation.

The trooper asked Bryant about his travel plans and his relationship with Kitchens (whom the trooper had observed sitting up in the back of the van as if arising from a nap). Bryant reported flying to Las Vegas for a family member's wedding the previous day but could not remember certain details of the wedding, including the time it started and who was married, *i. e.*, Bryant first stated that it was an aunt on his mother's side, but later stated that it was an aunt on his father's side. Bryant also stated that Kitchens was his uncle and had likewise attended the wedding but arrived in Las Vegas about a week earlier. The trooper observed Bryant was extremely nervous, even after learning he was receiving a warning rather than a ticket; Bryant's hands were shaking, his breathing was labored and almost twice the rate of the trooper's, and he failed to maintain eye contact. The trooper ran a computer check on Bryant and found there was a warrant out of South Carolina for someone with a similar name and birthdate. The trooper had some difficulty clearing this up because he had no radio communications with dispatch (due to lightning damage) and had to communicate with Sequoyah County dispatch with his cell phone.

In the meantime, the trooper left Bryant in the patrol car to talk to Kitchens, who was still in the van. The trooper asked for identification and questioned Kitchens about

travel plans; Kitchens claimed he had been in Las Vegas for about a week to gamble and attend a boxing match, but not to attend a wedding. The trooper observed that Kitchens also seemed extremely nervous; his hands shook and he cleared his throat excessively. The trooper testified that he suspected there was criminal activity afoot at this point, so he returned to his patrol car to run a check on Kitchens.

Bryant now revealed that Kitchens was actually his cousin by marriage, but that he called him his uncle because of the age difference. The trooper handed Bryant his license and rental paperwork, along with a written warning, and asked if he could ask some more questions as Bryant opened the door to exit. Bryant sat back down and answered several more questions, denying there were any guns or drugs in the rental van but refusing consent to a search by the trooper. The trooper (who was a member of the special operations unit and was traveling with a drug detection dog) then advised Bryant he was going to walk his dog around the rental van and put Kitchens in the patrol car with Bryant. The dog alerted to the presence of drugs on the passenger side of the van, and once inside, on several bags in the back of the van. The trooper then searched the van for drugs, finding approximately eight kilograms of cocaine in the bags, as well as smaller amounts of cocaine base and marijuana, and $21,450.00 in currency. Both Defendants were arrested.

### B. Analysis

The Defendants contend that the evidence taken from their rental van was illegally seized because: (i) the traffic stop took longer than the time reasonably necessary to issue

a warning citation; and (ii) the trooper had no reasonable suspicion of criminal activity for prolonged detention. Traffic stops are akin to investigatory detentions and are thus analyzed under the framework of *Terry v. Ohio*, 392 U.S. 1 (1968), which requires a stop to be "justified at its inception," and any resulting detention to be "reasonably related in scope to the circumstances which justified the interference in the first place." 392 U.S. at 20. *See also United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998), *citing United States v. Shareef*, 100 F.3d 1491, 1500-01 (10th Cir. 1996) (quoting *Terry* and applying it to a traffic stop). "An officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation. When the driver has produced a valid license and proof that he is entitled to operate the car, he must be allowed to proceed on his way without being subject to further delay by police for additional questioning." *United States v. McRae*, 81 F.3d 1528, 1534 (10th Cir. 1996), *quoting United States v. Gonzalez-Lerma*, 14 F.3d 1479, 1483 (10th Cir. 1994) [internal citations omitted]. *See also United States v. Gregoire*, 425 F.3d 872, 879 (10th Cir. 2005) ("In a routine traffic stop, a trooper may request a driver's license, vehicle registration and other required papers, run necessary computer checks, and then issue any warning or citation.") [citation omitted].

**1. The traffic stop was justified at its inception.**

"[A] traffic stop 'is reasonable under the Fourth Amendment at its inception if the officer has either (1) probable cause to believe a traffic violation has occurred or (2) a reasonable articulable suspicion that this particular motorist violated any one of the

multitude of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Ramstad*, 308 F.3d 1139, 1144 (10th Cir. 2002), *quoting United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999). The Defendants apparently do not dispute that they were speeding, but suggest that the true reason they were stopped was so the trooper could search their van for drugs, as he is a member of a special criminal interdiction unit. Any subjective motivation the trooper may have harbored in stopping the Defendants is, however, irrelevant given his reasonable suspicion that a traffic law was violated. *See United States v. Patterson*, 472 F.3d 767, 775 (10th Cir. 2006) ("The standard is an objective one; 'it is irrelevant that the officer may have had subjective motives for stopping the vehicle.'"), *reversed and remanded on other grounds by Patterson v. United States*, 129 S. Ct. 989 (2009), *affirmed by United States v. Patterson*, 561 F.3d 1170 (10th Cir. 2009), *quoting United States v. Tibbetts*, 396 F.3d 1132, 1137 (10th Cir. 2005); *see also Gregoire*, 425 F.3d at 878 ("Although Mr. Gregoire reminds us that the trooper was part of a Criminal Interdiction Team focusing on drug enforcement, stolen vehicles, and driving under the influence . . . the subjective motivation of the trooper is not pertinent given the observed violation."), *citing Whren v. United States*, 517 U.S. 806, 818 (1996). The undersigned Magistrate Judge therefore finds that the traffic stop was justified at its inception.

### 2. The trooper did not unreasonably prolong the traffic stop.

"An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the detention." *United States v. Gutierrez-Daniez,* 131 F.3d

939, 942 (10th Cir. 1997). In the context of routine traffic stops, an officer may detain a motorist only for as long as necessary to "request a driver's license and vehicle registration, run a computer check, and issue a citation." *McRae*, 81 F.3d at 1534. Once the driver produces a valid driver's license and proof that they are authorized to drive the car, the officer should allow the driver to "proceed on his way, without being subject to further delay by police for additional questioning." *Id.* "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Illinois v. Caballes*, 543 U.S. 405, 407 (2005). But, "the officer may detain the driver for questioning unrelated to the initial stop if he has an objectively reasonable and articulable suspicion illegal activity has occurred or is occurring." *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998), *citing United States v. Soto*, 988 F.2d 1548, 1554 (10th Cir. 1993). "The government bears the burden to demonstrate that an investigative detention was sufficiently limited in scope and duration, and, in the alternative, that the officer possessed reasonable suspicion of criminal activity." *United States v. Tkachenko*, 2005 WL 2133713, at *3 (10th Cir. Sept. 1, 2005), *citing United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001).

The Defendants contend that the trooper unreasonably prolonged their traffic stop, *i. e.*, instead of simply writing a warning citation and sending them on their way, the trooper peppered Bryant with questions unrelated to the purpose of the traffic stop, *e. g.*, where he worked, what he did in Las Vegas, and the specifics of the wedding he said he

attended.  Indeed, the Defendants asked the trooper to demonstrate how long it took to fill out a warning citation at the evidentiary hearing; it took just over three minutes.  Noting that the trooper finally handed Bryant his warning some twenty-six minutes into the stop, the Defendants argue they were unreasonable detained.  But the courtroom demonstration did not include any of the other tasks performed by the trooper prior to issuing the warning, *e. g.*, running Bryant's license through the computer (and clearing up what appeared to be an outstanding arrest warrant), reviewing the rental agreement which gave Bryant the authority to operate the van, and discussing travel plans with both Bryant and Kitchens, all of which are appropriate tasks in a routine traffic stop.

> During a routine traffic stop, an officer may request a driver's license, registration, and other required papers, run requisite computer checks, and issue citations or warnings.  During the stop, an officer may routinely inquire about the driver's travel plans.  The officer may even go further, inquiring into matters unrelated to the stop.  "Even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage."

*United States v. Kaguras*, 183 Fed. Appx. 783, 786 (10th Cir. 2006), *quoting Muehler v. Mena*, 544 U.S. 93, 101 (2005) [internal citations omitted].  *See also United States v. Zabalza,* 346 F.3d 1255, 1259 (10th Cir. 2003) ("The detaining officer may also question the vehicle's *occupants* regarding their identities, travel plans, and ownership of the vehicle.") [emphasis added], *citing United States v. Rivera,* 867 F.2d 1261, 1263 (10th Cir. 1989).  Nor did the demonstration take into account technical difficulties encountered by the trooper during the stop, *i. e.*, inability to use the patrol car radio and

the resulting need to conduct communications through the sheriff's department dispatch via cell phone.

In determining whether the detention prior to the issuance of the warning citation was unreasonable, a court "must consider the individual circumstances that confronted the troopers, using 'common sense and ordinary human experience' to determine whether 'the police acted less than diligently, or . . . unnecessarily prolonged [the] detention." *Patterson*, 472 F.3d at 776, *quoting United States v. Sharpe*, 470 U.S. 675, 685-86 (1985) ("In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant."). A court "need not make a time and motion study of traffic stops; we consider the detention as a whole and the touchstone of our inquiry is reasonableness." *Patterson*, 472 F.3d at 776. There is no indication that the trooper manipulated the traffic stop in this case simply to prolong it, particularly in light of the substantial time it took him to clear up the confusion as to whether Bryant had an outstanding warrant and the ensuing technological difficulties the trooper faced in doing this. The undersigned Magistrate Judge therefore finds that the detention at issue in this case was not unreasonable in scope or duration, even for the purpose of issuing a written warning. *See, e. g., United States v. Valenzuela*, 494 F.3d 886, 890 (10th Cir. 2007) ("Rather, our cases focus on the reasonableness of the traffic

stop in light of both the length of the detention and the manner in which it was carried out.").

### 3. A reasonable suspicion of criminal activity supported the canine sniff of the van.

When the trooper handed Bryant his warning citation and returned the Defendants' paperwork, the traffic stop was complete. The trooper was thereupon required to release the Defendants unless the encounter became consensual or the trooper had a reasonable suspicion they were engaged in criminal activity. *See, e. g., Zabalza,* 346 F.3d 1255, 1259 (10th Cir. 2003), *citing Gonzalez-Lerma,* 14 F.3d at 1483. As a practical matter, the trooper was required to have a reasonable suspicion of criminal activity at this time in order to ultimately detain the Defendants for a canine sniff of their van, because the questioning of Bryant that followed yielded no useful information, and the traffic stop probably never become consensual as to Kitchens.[1] Reasonable suspicion requires "considerably less than proof of wrongdoing by a preponderance of the evidence, but

---

[1] With regard to questioning of Bryant after the trooper returned his paperwork and handed him his warning citation, the traffic stop arguably turned into a consensual encounter as to Bryant. *See United States v. Turner,* 928 F.2d 956, 959 (10th Cir. 1991) ("[O]nce the officer has returned the driver's license and registration in a routine traffic stop, questioning about drugs and weapons or a request for voluntary consent to search may be 'an ordinary consensual encounter between a private citizen and a law enforcement official.'"), *quoting United States v. Werking,* 915 F.2d 1404, 1408 (10th Cir. 1990). *See also United States v. Hernandez,* 93 F.3d 1493, 1498 (10th Cir. 1996) ("A traffic stop may become a consensual encounter if the officer returns the license and registration and asks questions without further constraining the driver by an overbearing show of authority."), *quoting Werking*, 915 F.2d at 1408-09. This is, however, far less arguable as to Kitchens, because it is not clear that the trooper's request to ask Bryant further questions conveyed to Kitchens that *he* was free to leave. *See United States v. Guerrero-Espinoza,* 462 F.3d 1302, 1309-1310 (10th Cir. 2006) ("[T]here is no evidence that a reasonable person in [the passenger's] position would have believed he was free to leave. While the trooper had already returned [the driver's] license and had completed writing [the driver] a warning, there is no evidence that [the passenger] knew that."). But in any event, as discussed below, the trooper had already developed a reasonable suspicion of criminal activity and it was therefore permissible to detain both Defendants for a canine sniff of their van.

something more than an inchoate and unparticularized suspicion or hunch." *United States v. Melendez-Garcia*, 28 F.3d 1046, 1051 (10th Cir. 1994), *quoting Alabama v. White*, 496 U.S. 325, 329-30 (1990). The Court must consider the totality of the circumstances. *See Shareef*, 100 F.3d at 1505, *citing McRae*, 81 F.3d at 1534. An officer's conduct is judged "in light of common sense and ordinary human experience," but deference is accorded "to an officer's ability to distinguish between innocent and suspicious actions." *United States v. Williams*, 271 F.3d 1262, 1268 (10th Cir. 2001).

The undersigned Magistrate Judge finds that the trooper's observations *do* give rise to a reasonable suspicion the Defendants were engaged in criminal activity. First, although of limited significance, both Defendants demonstrated signs of extreme nervousness, *e. g.*, shaking hands, cracking voice, labored breathing, and limited or no eye contact. *See United States v. Wald*, 216 F.3d 1222, 1227 (10th Cir. 2000) ("[T]his court has repeatedly recognized" that nervousness "'is of limited significance' . . ."). Second, and more importantly, the Defendants provided inconsistent stories for their time in Las Vegas, their travel plans, and their relationship. *See, e. g.*, *United States v. Mendez*, 118 F.3d 1426, 1431 (10th Cir. 1997) ("[C]ontradictory or implausible travel plans can contribute to a reasonable suspicion of criminal activity."); *United States v. Kopp*, 45 F.3d 1450, 1453-54 (10th Cir. 1995) (inconsistent statements regarding travel plans and relationship of driver and passenger were relevant factors, among others, in providing reasonable suspicion sufficient to justify detention for drug dog sniff). Third, the trooper noted the strong smell of air freshener when he approached the rental van.

*See United States v. Ludwig*, 641 F.3d 1243, 1248-49 (10th Cir. 2011) ("[T]he use of cologne or perfume . . . is commonly used to mask the odor of drugs and so can contribute to a reasonable suspicion calculus.") [quotation omitted]; *United States v. Sanchez-Valderuten*, 11 F.3d 985, 989 (10th Cir. 1993) (officer had reasonable suspicion based on, *inter alia*, "masking odor" of air freshener). Fourth, Defendant's Bryant's rental agreement was only one way. *See United States v. Bradford*, 423 F.3d 1149, 1157-58 (10th Cir. 2005) (citing, *inter alia*, "series of one-way plane tickets and one-way car-rentals" in the totality-of-the-circumstances calculus).

In any event, the objective test focuses not on any one factor, but instead on the "totality of the circumstances." The undersigned Magistrate Judge finds such factors, when taken as a whole, were sufficient to create a reasonable suspicion that Bryant and Kitchens were engaged in criminal activity. The trooper was therefore justified in detaining the Defendants for further investigation, including a canine sniff of their rental van. *See Tkachenko*, 2005 WL 2133713, at *5 ("[T]he court finds that in the event the traffic stop was extended beyond the time necessary to issue a warning ticket and to conduct ordinary inquiries incident to this traffic stop, the dog sniff was supported by reasonable suspicion."). The dog alert to the presence of drugs provided probable cause to search the van, *see e. g., United States v. Kennedy,* 131 F.3d 1372, 1378 (10th Cir. 1997) ("[P]robable cause can be based on alerts by trained dogs."), *citing United States v. Klinginsmith,* 25 F.3d 1507, 1510 (10th Cir. 1994), so the subsequent discovery of

cocaine, cocaine base, marijuana, and a large amount of U.S. currency was lawful. Suppression of that evidence is therefore unwarranted.

### C. Conclusion

Accordingly, the undersigned Magistrate Judge hereby PROPOSES the findings set forth above and RECOMMENDS that both the Defendant Bryant's Motion to Suppress [Docket No. 39] and the Defendant Kitchens' Motion to Suppress [Docket No. 41] be DENIED. Objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

IT IS SO ORDERED this 9th day of August, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma