IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> KENNETH CORNELIUS KITCHENS and ABDUL HUNT QUAN BRYANT, <br><br> Defendants. | Case No.   CR-11-040-RAW |

**ORDER**

Before the court are the Defendants' Motions to Suppress [Docket Nos. 39 and 41] as well as their Objections to the Magistrate's Report and Recommendation [Docket Nos. 59 and 60]. The court held a hearing on the Motions and Objections on September 6, 2011. This order memorializes and capsulizes the court's ruling from the bench, sustaining the Defendants' Objections to the Report and Recommendation and granting the Defendants' Motions to Suppress.

Additionally before the court is the Government's Motion to Reconsider [Docket No. 68]. The Government's motion merely directs the court's attention to the recent case of United States v. Kitchell and provides no additional analysis. The court has reconsidered its ruling, and the ruling remains the same. The Objections to the Report and Recommendation are sustained, and the Motions to Suppress are granted.

The basis for the Defendants' motions is: when making a traffic stop of the Defendants, Trooper Cody Hyde improperly extended the stop in attempting to develop reasonable suspicion of criminal activity that would lead to a search of the vehicle and the discovery of contraband.

The law regarding traffic stops of this kind is well-known. An "investigative detention must last no longer than is necessary to effectuate the purpose of the stop, and the scope of the detention must be carefully tailored to its underlying justification." United States v. Kitchell, Nos. 09-6176, 09-6206, 2011 WL 3452082 *7 (10th Cir. August 9, 2011) (quoting United States v. Hunnicutt, 135 F.3d 1345, 1349 (10th Cir. 1995)). "In addition, 'an officer may ask questions, whether or not related to the purpose of a traffic stop, *if they do not excessively prolong the stop*.'" Id. (quoting United States v. Simpson, 609 F.3d 1140, 1146 n. 1 (10th Cir. 2010) (emphasis added)).

Thus, '[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.'" Id. (quoting Illinois v. Caballes, 543 U.S. 405, 407 (2005)). A "traffic stop may be expanded beyond its original purpose if during the initial stop the detaining officer acquires reasonable suspicion of criminal activity, that is to say the officer must acquire a particularized objective basis for suspecting the particular person stopped of criminal activity. Id. (quoting United States v. White, 584 F.3d 935, 949 (10th Cir. 2009)).

Some of the facts in this matter are undisputed. For example:

1. The driver, Defendant Bryant, had his papers in order (his papers being driver's license and contract for his rental vehicle).

2. No question arose regarding insurance coverage or proper drivers under the rental agreement.

3. Defendant Bryant gave an explanation to Trooper Hyde of his travel plans. He stated he had flown from New York to Las Vegas, attended a relative's wedding and rented a car to return to New York.

4. Trooper Hyde found no outstanding warrants for either Defendant.

5. Trooper Hyde can fill out a typical traffic warning citation in approximately three minutes.

6. Here, the Defendants were detained for nearly twenty-seven minutes before Defendant Bryant was finally issued the traffic warning citation.

7. Defendant Bryant first said he was in Las Vegas to gamble and attend the wedding of his aunt on his mother's side. Then he said it was his aunt on his father's side.

8. Defendant Bryant told Trooper Hyde that while Defendant Kitchens is his cousin by marriage, Bryant calls him "uncle" because he is older than Bryant.

9. The patrol car was equipped with two cameras: one directed at the

     passenger inside the patrol car and one directed out the patrol car's front window.

10.    The sound equipment for audio recordings outside the patrol car did not record Trooper Hyde's conversations with Kitchens and Bryant.

11.    Parts of the encounter are not recorded in Trooper Hyde's report.

Other facts are disputed. For example:

1.    Whether there was the smell of air freshener in the vehicle.

2.    Whether Defendant Bryant was nervous while seated in the patrol car being questioned by Trooper Hyde.

3.    Whether the Trooper's radio was working improperly and caused a delay in obtaining any information regarding outstanding warrants regarding the Defendants.

4.    Whether Defendant Kitchens told Trooper Hyde that he did not attend a wedding after Defendant Bryant said that they both attended it.

The information regarding the smell of air freshener and the radio not properly working are undisputably absent from Trooper Hyde's written report. While troubling, the court will still accept those facts as asserted by the Government. After all, the evidence should be taken in the light most favorable to the Government. Nevertheless, inferences flowing from the evidence are properly diminished in weight in light of existing law, which is discussed more fully below. Moreover, the Government still bears

the burden of proving the reasonableness of the search. Kitchell, 2011 WL 3452082, at *6.

The court takes as true the assertion that Defendant Bryant was nervous. Nervousness is, however, of limited significance in determining reasonable suspicion of criminal activity. Id. ("[N]ervousness is a common and natural reaction to an interaction with a police officer whether one is innocent or guilty."). In watching the video of Defendant Bryant during the stop, the court did not detect any overt nervousness of Defendant Bryant. Trooper Hyde also stated that he timed Defendant Bryant's respiration rate and it was twice as fast as his own. Of course, the trooper was in a better position to observe the Defendant than the court. Still, an objective and reasonable explanation for any nervousness could be the fact that a large German shepherd was merely inches away, pacing, whining, and barking in the back seat of the patrol car. Regarding Defendant Bryant's respiration rate, the court wonders how such a delicate and meticulous observation could be accurately made in light of the other activities occurring inside and outside the patrol car.

Trooper Hyde testified that there was a strong odor of air freshener in the vehicle. The court takes this assertion as true. Nevertheless, the court believes it is hardly unusual for a vehicle to smell of air freshener.[1] Also, the Tenth Circuit has noted that the "scent

---

[1] This is especially true for rental cars, as car rental companies no doubt wish to promote the idea that the vehicle has been thoroughly cleaned between customers. The officer's conduct must be judged in the light of common sense and ordinary human experience. Kitchell, 2011 WL 3452082, at *9.

of air freshener, standing alone, is inadequate to support a reasonable suspicion absent other indicia of criminal activity." United States v. Kaguras, 183 FedAppx. 783, 790 (10th Cir. 2006).

While watching and listening to the video of the traffic stop, the court believes it saw and heard Trooper Hyde using the patrol car's dispatch radio. Nevertheless, the court takes as true the Government's assertion that the patrol car's radio was not working properly (as opposed to not working at all) and delayed the ultimately unsuccessful search for outstanding warrants regarding the Defendants. Still, as argued by the Defendants, the court does not see how this fact necessarily redounds to the benefit of the Government. No outstanding warrants regarding the Defendants were discovered. Furthermore, a reasonable and objective assessment of a lengthy stop suggests that during a traffic stop, an officer in a similar situation (i.e. with a defective radio) might defer an extended search for outstanding warrants in order to avoid unreasonably extending the detention of a traffic offender.

Of course, even if there is a reasonable explanation by the Defendants for each point of fact which the Government asserts adds up to reasonable suspicion of criminal activity on behalf of the law enforcement officer, the court looks at the totality of the circumstances. United States v. Davis, 636 F.3d 1281, 1290-91 (10th Cir. 2011) ("To determine whether an officer has a reasonable suspicion to detain beyond the scope of the traffic stop, we must look at the totality of the circumstances of each case to see whether

the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.")  The existence of reasonable suspicion of criminal activity is a "fluid concept." Kaguras, 183 FedAppx. at 786 ("Reasonable suspicion is a 'fluid concept' that is context dependent.").  Of course, this fluid concept must be applied to both the Government's and the Defendants' perspective.

Employing a fluid analysis to all the circumstances, the court cannot find that the extended stop of the Defendants was proper.  The reasonable inferences drawn from the undisputed facts, and the facts decided in favor of the Government, do not sufficiently establish that a reasonable suspicion of criminal activity existed to detain the Defendants nearly twenty-seven minutes.  Defendant Bryant had his papers in order, and he gave a reasonable explanation of his travel plans.  Any inconsistencies in Defendant Bryant's and Kitchens' accounts of their travel plans were minor.  Still, the issuance of a warning citation here took nearly twenty-four minutes longer than the ordinary issuance of such a citation.

Even if a reasonable suspicion of criminal activity eventually existed, the court is obliged to find that the manner of determining that reasonable suspicion was doubtful. Trooper Hyde asked questions far outside the typical ones asked of drivers during a traffic stop.  It is primarily this "outside the box" questioning that extended the traffic stop.  The questions regarding gambling winnings and wedding attendees cannot accurately be described as inquiries about travel plans.  Thus, this militates against any alleged

inconsistencies in the Defendants' responses to Trooper Hyde's questions.

Even if a reasonable suspicion of criminal activity eventually existed, and even if the manner in which the suspicion was developed was proper, the length of time taken by Trooper Hyde to develop the information and issue the warning was simply too long. Trooper Hyde was not diligently performing his duty of writing the warning; instead he was diligently pursuing reasonable suspicion. Such a finding shows this traffic stop does not comport with the dictates of Kitchell.

In Kitchell, the district court found that Trooper Hyde "diligently obtained the information he needed in order to accomplish the lawful purpose for which he stopped [the defendant], which was issuing a warning for a traffic violation." Kitchell, 2011 WL 3452082 at *8. Any delay was caused by Trooper Hyde's need to move back and forth between his patrol car and the defendants' vehicle to question all three men. Id. Trooper Hyde also explained the reason for the stop, obtained information from the three men in the vehicle, examined the rental agreement, and requested and waited for a warrant check. In that case, the nearly twenty-two minute interval between the stop and the point at which Trooper Hyde returned the defendant's driver's license was not found to be unreasonable.

The facts of this case are different. From the court's review of the videotape, it did not appear that Trooper Hyde was diligently performing these duties in this instance. He sat with Defendant Bryant in the car for a long time questioning him about his activities

8

in Las Vegas. Trooper Hyde was not explaining anything related to the reasons for the stop to Defendant Bryant while they were in the patrol car. Of course, he may have already explained the reason for the stop while he was leaning in the window of the van before taking Defendant Bryant to the patrol car. Nevertheless, it did not appear that Trooper Hyde was writing a warning notice during the first several minutes in the patrol car. In fact, it was approximately eleven (11) minutes before Trooper Hyde even asked Defendant Bryant his first name for purposes of writing it on the warning. This is not diligently obtaining the information he needed in order to accomplish the lawful purpose for which he stopped the Defendants.[2]

    Moreover, as Defendant Bryant argues, there are other striking distinctions between the facts of this case and those in Kitchell. In Kitchell, the driver was not an authorized driver under the car rental agreement and there were questions regarding adequate insurance. Here, Defendant Bryant's papers were in order. In Kitchell, there were major inconsistencies between what the driver and the two passengers told Trooper Hyde about their travel plans. Here, any such inconsistencies were minor. In Kitchell, Trooper Hyde issued the warning in nearly twenty-two minutes; here, it took nearly twenty-seven minutes, despite the fact, as Defendant Bryant argues, that there was less

---

[2] Defendants' counsel spend much time and effort upbraiding Trooper Hyde's ethics and conduct. The court does not join in this assessment. Out of necessity, law enforcement officers have become ersatz Fourth Amendment lawyers; however, they also retain (luckily) their police instinct. Sometimes this instinct prevails over their interpretation of the complexities of Fourth Amendment jurisprudence. A mistake perhaps, but hardly worthy of condemnation.

work for him to do.

In this instance, Trooper Hyde's questions excessively prolonged the traffic stop. Therefore, the Defendants' Motions to Suppress [Docket Nos. 39 and 41] are granted, the Objections to the Report and Recommendation [Docket Nos. 59 and 60] are sustained, and the evidence that is the fruit of the search is excluded.  The Motion to Reconsider [Docket No. 68] is denied.

Dated this 3rd day of  October, 2011.


**Dated this 3rd day of October, 2011.**

_____
Ronald A. White
United States District Judge
Eastern District of Oklahoma